The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Ms. Bateman. Yeah, I don't see her on the screen. Hi, Your Honor. Yes, I'm here. Oh, good, good. Good morning. And I would ask counsel if you're not on the first case or your case, ask that you would turn off your video feed. Thank you so much. Ms. Bateman, you may proceed. Thank you, Your Honor, and may it please the Court. Lauren Bateman for Petitioner-Appellant Gary Wall. The rule this Court announced in Lanier applies to Mr. Wall's case, and neither Wolfe nor Teague say otherwise. Wolfe never limited federal habeas review. It's a Section 1983 case that limits Section 1983 relief. Teague is the case that governs habeas retroactivity questions, and Teague bars retroactivity only for habeas courts reviewing final criminal judgments. It has nothing to say about prison administrative decisions that no court has examined, let alone approved. I will address Teague and Wolfe in turn. First, Teague is no bar to the retroactivity of Lanier. The general rule is that a court applies the law as it exists at the time it resolves a case or controversy. Teague carved out a limited exception to that general rule when it held, and here I quote Teague's holding, quote, And the language of that holding illustrates why Teague is inapplicable here. This is not a criminal case. It's a decision by a prison administrator, and the case has not become final. Indeed, this litigation is the very first time a court has considered Mr. Wall's constitutional claims on the merits. That makes it quite unlike the type of case that Teague describes, where a state court has rendered a final criminal judgment and all appeals have been exhausted. The rationale of Teague also- If that's so, how do we get jurisdiction? I mean, this is habeas, and we're a collateral review. Our authority is for collateral review, and you're making it sound like we're directly reviewing the state administrative agency. That's a peculiar circumstance, isn't it? I don't think so, Your Honor. You are absolutely correct that this court is sitting in habeas on collateral review, but it reviews as though it were reviewing the issue on direct appeal in a circumstance where there is no final judicial pronouncement on the merits of the claim. So it's reviewing the case as though it were on direct review because the Virginia Supreme Court declined to issue an opinion on the merits. Counsel, would you apply the same rule? I'm not sure why that matters, right? We often face criminal cases where the state court declines or does not issue a decision on the merits, and that obviously affects the standard of review we apply in giving deference or not under Teague. But it doesn't affect the Teague rule, right? The lack of a decision on the merits by the state's highest court doesn't affect Teague. It only affects our review under the deference provision, right? That is correct, Your Honor, but the lack of final judgment speaks to the rationale of Teague. So the Teague court was animated by, in part, the concern that… Let me back up just to make sure I understand. But the point is, you just were suggesting the lack of a decision on the merits makes this case different. But the lack of a decision on the merits is actually quite common in a criminal context where, for one reason or another, the state court doesn't issue a decision on the merits. And either that's a procedural default or it doesn't get deference that it would normally get, but it doesn't ever change the Teague application, right? It just affects the degree of deference we give the state court's decision. That may be the case, Your Honor, but here there's no state court decision to which deference would be owed because no court has… That's exactly the example in the criminal context, right, where the state court does not issue a decision on the merits, but the claim is otherwise exhausted. Teague applies, but subsection D, deference, does not apply, right? And so it strikes me that that's the same situation we have here. There's not a decision on the merits, and so we don't give deference to that decision under D. But Teague, which interprets the statute 2254, applies no different here. But, Counselor, you're arguing a little bit further that Teague doesn't apply because it's not criminal, and there's no decision made, so there's no deference. But even further, there's no adequate remedy under the state, and that's one of the aspects of 2254. There's no state remedy. It's not adequate. It's not just not on the merits, but there's no remedy. Virginia said, we don't have jurisdiction. So, Judge Richardson makes a great point. It's not just because it's not on the merits. But Teague is because it's not criminal, and there's no deference because there's no decision, but it's not because it's not a merit decision. It's just they basically punted. Say, we don't have jurisdiction to even hear it. So that means the federal court has to wait and say, well, we can't hear it. I think that part of the judge, Nehemiah, is a good question. That is, what do we do to jurisdictions? Because that's what the great writ is for, when the state won't answer. Surrender the body. And it has no adequate remedy, and that's what we have here. Isn't that your argument? That's precisely right, Your Honor. And I think the rationale of Teague reveals why that is precisely correct. Because the Teague court was animated by two concerns. One was comedy with state courts and refraining from undermining the integrity of state court processes. But as you observed, that is not implicated here because there's no state court process to undermine. The state court didn't issue a decision on the merits. But also, the Teague court was concerned with the social and judicial costs of relitigating final convictions. And here, there's no criminal conviction at all. And the attendant costs of relitigating Mr. Wall's case alongside similarly situated cases is exceedingly small. Because Lanier can only apply retroactively to a slim category of cases. There's also a practical reason not to recast Teague in the way that the Commonwealth seeks. And that's that it would represent a radical expansion of non-retroactivity doctrine and a significant departure from the status quo. Prison disciplinary decisions would be effectively unreviewable, except in the exceedingly rare case described in Lambert v. Singletary, where the constitutional violation at issue is indistinguishable from one described in the past precedent. That sweeping preclusion of prisoner constitutional claims is, as the Supreme Court has stated, plainly untenable because there's no iron curtain drawn between the Constitution and the prisons of this country. Counsel, can I ask a slightly different question on a different angle? We talked a little bit about the state Supreme Court, and they relied on the Carroll v. Johnson decision and said we lack jurisdiction over the prison disciplinary decision. Would it make a difference to your argument if that is incorrect? So, in other words, if Carroll v. Johnson actually does permit the state courts, be it the Circuit Court or the Supreme Court, to review prison disciplinary hearings under state habeas? It would not make a difference, Your Honor. And the reason why I say that is that the question before this court now is whether Mr. Wall is entitled to a court, any court, reviewing his constitutional claims. Had the Virginia Supreme Court decided differently, of course, we would be in a different situation. Had it issued an opinion on the merits, a deference might apply to that opinion. But here, the only question is whether Mr. Wall is entitled to have any court look at his claims. Well, but the point is, is that, you know, if the state system permits review and, you know, we don't have the situation that you're describing, right? We have a situation like we see all the time where there's not a decision on the merits. Right. But it was properly exhausted. And so you don't get deference. But Teague still applies. Right. And so I guess what I'm getting at is if the proper reading of Carroll v. Johnson is that this type of claim is indeed reviewable under state habeas, then we're in the same boat that we were before. No, I don't think so, Your Honor. And the reason I say that is because that would subvert the underlying rationale of Teague, which is deference to state court decisions. So if this court were to. That would be true in a criminal case where there was not a decision on the merits either. Right. I mean, so in a criminal case where there's not a decision on the merits, Teague applies, but you don't get deference. Right. And so whatever the whatever we want to talk about, the rationale, the interpretation of 2254, which is what Teague is doing, that doesn't change because there's not a decision on the merits. I understand your desire to go back to the failure to have a decision on the merits. Right. Because I understand why you want to go there, but it doesn't get you anywhere. I don't believe. Well, Your Honor, I think Teague's other the other element of Teague's holding is that it requires for non retroactivity to apply. It requires there to be a final criminal conviction. So your examples stemming from a final criminal conviction, I don't think speak to this particular circumstance where there hasn't been a final criminal conviction. And so the rule that would apply is just the one that the Supreme Court articulated in Griffith v. Kentucky, which is simply apply the law as it is at the time the court reviews the decision. The Commonwealth's other argument is that Wolf bars the application of linear to this case. But the Wolf Court was very clear that it intended only to limit the scope of relief as to 1983 cases where incarcerated people sought damages or an injunction. Wolf did not limit the scope of habeas relief for cases in which the fact of confinement is challenged and the remedy sought is restoration of good time credits. But if Wolf ever spoke to the retroactivity of habeas relief, it certainly doesn't as of 1989, because Teague is the case that governs that question. And there are two ways we know that to be true. The first is doctrinal. Teague's lengthy discussion of the issues with the link letter standard for retroactivity, i.e. the regime that Teague displaced, demonstrates that the court intended to put a halt to exactly the kind of retroactivity analysis we see in Wolf. Wolf's retroactivity analysis, which balances the gravity of the right at stake with the practical difficulties of making a particular form of relief retroactive, is the exact kind of rootless free-ranging balancing approach that the Supreme Court found so disturbing in link letter because it led to disparate results for similarly situated individuals. And the second reason we know that Teague, not Wolf, governs questions of retroactivity in habeas cases is empirical. The Commonwealth has not identified, and we have not found, a single case in this circuit or otherwise where a court applied Wolf's retroactivity analysis in the habeas context post-Teague. But isn't the reason for that because Teague is itself interpreting the statute, right? The rationales are what they are, but Teague said the statute, 2254, which you are proceeding under, means that you do not look at, you know, later adopted procedural or substantive rules, right? And that's changed a little bit recently with the procedural pieces. But the procedural and substantive rules that are later don't get looked at under 2254, right? Just the statutory definition, right? So how do we look at that? And that's why we're not applying Wolf is because you're proceeding under 2254, and Teague interpreted 2254. That is correct, Your Honor. Teague interpreted the scope of availability of habeas relief. That is correct, under 2254. But in doing so, it interpreted the statute, right? It's not interpreting the Great Writ, right? It divines this rule that we now call the Teague rule, right? But from the statute, it's a statutory interpretation case, right? I don't think so, Your Honor. I don't think Teague is a straight-up statutory interpretation case. Rather, it tailored the scope of habeas relief based on concerns that are found outside of the statute, namely comedy-to-state courts and the practical considerations of relitigating final criminal convictions. And they were concerns that were in the context of criminal cases and convictions, were they not? That is precisely correct. And the last argument that we would like to advance is that even if this court were to stand in equipoise on the question of retroactivity, it should simply reach the same conclusion as the Lanier court did. As the Lanier court observed, its ruling stemmed from binding precedent in this court and in the Supreme Court, and Lanier itself applied to events that had already occurred. And finally, this court has already afforded other litigants exactly the relief that Mr. Wall seeks. Both in McWilliams v. Sod and Hawkins v. Coakley, this court applied Lanier's principles to habeas petitions denied in the district court before Lanier was announced. This court should do the same here. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, Ms. Bateman. Ms. Samuels, you may proceed. Good morning, Your Honors. May it please the Court? Yes. Jessica Samuels for Respondent. In 2015, Petitioner Mr. Wall was charged with and found guilty of assaulting two corrections officers at Red Onion State Prison in 2015. In this case, Mr. Wall seeks federal habeas relief based on the court's recent decision in Lanier v. Wilson regarding access to video evidence. But Lanier was not decided until 2019, long after Mr. Wall's disciplinary convictions became final and several months after the district court had dismissed Mr. Wall's habeas petition. Despite this mismatch in timing, Mr. Wall asks that the principles applied in Lanier be applied here retroactively in federal habeas to vacate his disciplinary convictions. While it is far from clear that Mr. Wall would actually prevail on the merits, primarily because the hearings officers have since seen the video at issue and testified under oath in a separate case that it would not have made a difference, this court need not reach those merits issues here. As a threshold matter, Lanier may not be applied retroactively to Mr. Wall's habeas petition under two separate lines of Supreme Court precedent, one grounded in Wolfe and the other in Teague. Both Wolfe and Teague adopt a strong policy against retroactivity of new procedural rules, and each precedent provides an independent basis on which this court should affirm the dismissal of Mr. Wall's petition below. I'd like to begin with the Wolfe holding, the Supreme Court's non-retroactivity holding here, because our view is that provides a sufficient basis for this court to affirm. In Wolfe, the court considered what minimum procedures the due process clause requires for prison disciplinary proceedings. And in doing so, the court specifically reversed the Eighth Circuit's holding that the newly announced due process requirements applied retroactively to disciplinary proceedings that had already taken place at the time the court issued its decision. The court reached its non-retroactivity conclusion by looking to precedent regarding parole revocation proceedings and reasoning that if those standards only applied in the future, which was already a given at that time, given prior precedent, then the same had to be true for the prison disciplinary proceedings at issue in the Wolfe case. That conclusion was also informed by the great weight that must be given to the significant impact a retroactivity ruling would have on the administration of prisons and the reliance prison officials placed in good faith on prior law not requiring such procedures. The year after Wolfe, the Supreme Court confirmed that it meant what it said about retroactivity and prison disciplinary proceedings. In Cox v. Cook, the Supreme Court reversed a decision of this court allowing a suit to proceed against Virginia prison officials that challenged disciplinary proceedings under the standards outlined in Wolfe. But, as the court noted, those proceedings predated Wolfe and the Supreme Court accordingly reversed because the Wolfe decision was expressly not retroactive. The same is true here, and the Seventh Circuit's decision in Sanchez has already so held. Sanchez was also a federal habeas case where the petitioner sought retroactive application of a decision that established standards for prison disciplinary adjudications. Applying Wolfe, the Seventh Circuit declined to apply the new rule retroactively. That principle from Wolfe resolves this case, and Mr. Wall has not shown otherwise. It's true, as discussed this morning, that Wolfe was not a habeas case, but that's a question of remedy rather than substantive law, and is also a feature of the fact that the decision predated the stricter rules we have today under Heck v. Humphrey that police the line between Section 1983 and habeas relief. Even so, regardless of whether a litigant seeks damages or injunctive relief restoring good time, the court in Wolfe was still evaluating the same core question we're presented with here, which is what the Due Process Clause requires and, specifically to this case, whether that holding should apply retroactively in the prison disciplinary context. Wolfe also does not appear to adopt or authorize the type of balancing that petitioner claims. Rather than suggesting some sort of ad hoc inquiry balancing burdens and rules, Wolfe's non-retroactivity holding, in our view, is more of a bright-line rule that changes of equal or lesser scope to what is required of prison officials in prison disciplinary hearings will not be applied retroactively. And so for all of those reasons, Your Honors, we think if you would prefer not to get into Teague, that Wolfe is an independent and separate basis that decides this case and that Sanchez has already done so and that this court could follow suit here. And you recognize Wolfe, of course, is a 1983 case. Yes, Your Honor. And in Wolfe, they were concerned about the damage aspects of these 1983 cases, correct? Yes, Your Honor. Wolfe was a 1983 case. And they were concerned about the damages aspect of those cases that might come up in terms of these civil claims for damages in terms of whether or not they did not? I agree they were concerned because that was the remedy that allowed the court to proceed there because Priester B. Rodriguez had already held that case seeking relief couldn't be held and couldn't proceed in 1983. But I don't agree, Your Honor, that the only issue the court was weighing in Wolfe was a damages relief in a section 1983 case. The non-retroactivity holding specifically quotes the great weight that should be given to the significant impact a retroactivity ruling would have on the administration of prisons and also the good faith reliance of prison officials. And so I think that there the court is looking at more than just necessarily litigation or money or the state coffers or damages. I think there the court was specifically looking at this question about whether the procedural due process protections that were announced, whether those can be applied retroactively given that state prison officials had proceeded up to that point under fully consistent federal law. Go ahead, I won't cut you off. Go ahead. I just think that there was a lot at play in Wolfe. And I think the fact that it came before the strict line that we have today about section 1983 in habeas, it shows that that doesn't take it fully off the table here. It's still applicable because I think under the precedent that applies today, the ruling would have been that that had to be in habeas because a finding for the prisoner would have undermined the prison disciplinary conviction. So I think that it's a feature of when Wolfe was decided, but I don't think it cuts against the non retroactive non retroactivity holding. Let's say since you opened the door this way by argument, you said you talked about how I guess we should feel sanguine that you said some hearing officers have looked at the tape and they're satisfied that what it shows and didn't show. Right. We should be feel sanguine about that in this case. I agree with that, Your Honor, but I don't think you need to reach that issue here. I think it just shows that if the court were to reach a retroactivity holding here, that the best Mr. Wall could do is remand because there are harmless error issues that would need to be analyzed. And Lanier specifically said that harmless error applies to the new rule that it announced. And I think we would have a very strong harmless error case here as evidenced by that other litigation that that we've referenced this morning. And I, I also think that the. Oh, really. Was it the criminal case was dropped against him was it not with even more. He never faced criminal charges. That's correct. It was dropped by the prosecutor after looking at the tape. That's my understanding. It was not only prosecuted. Yes. And all he was asking for is that saying, look at the tape. It's out of that impact. I mean, you've taken the time for hearing. You said it must be relevant because you allow someone else who looked at it to give examination of their interpretation. So, how would you not. How does that comport with any sense of justice. I mean, since you opened it up I just how would that. How does that. Your honor, I think at the time that the hearing fully complied with the rules and the federal procedural due process protections that existed in 2015, the rules, you mean you take up. You take nine months from somebody and all you have to do is look at the tape that's in your control. At the time, your honor, the wolf. I'm not talking about the time I'm talking about the commonwealth. I'm a Virginian. You know, we are proud Thomas Jefferson and all those ideas and constant principles. I'm not I'm talking about the idea of sense of fairness and decency. Why would you why would you play it if it's so clearly inculcating just playing. I mean, you don't know. I mean, I just I'm just wondering about this case. Why are you disappointed in the sense that somebody wouldn't say, well, let's play it. There are several reasons that in 2015 at the time of these adjudications that the default rule in the Department of Corrections was not that all prisoners could have access to all videotapes whenever they asked for it. I agree. I agree. There are circumstances where absolutely that's not this case. Right. There's some cases may implicate informants. You don't want to know. But this is where he's charged with assaulting two officers, not involving other inmates. We know that the parties are is Mr. Wall and allegedly what happened between two officers. So you're not expanding the scope or bringing in people who may be informants. You're just trying to bring in truth. And that truth cuts one way or the other. It hurts him or it helps him. But truth and sense of just just can you help me with that? How does the Commonwealth take a position like that? Your Honor, there are the example in this case is that much of what happened here happened in a blind spot in the video. And that's just one example of a security reason that providing video across the board may not be may not be a penological sort of theological interest. But more importantly, your honor, I think this view was never raised in the record. You know that. That's right, your honor. But it's because it was raised in the record at all. None of the penological leases, none of it. You got to argue the record at least. You know, I'll let you go, but I'm just, you know, I don't know. Just a sense of justice and decency to take nine months away from a person. I mean, nine months at the time in prison to be very dangerous. I mean, it's a big difference. I'll let you go. I guess you've asked the best you can. Thank you. I agree, your honor, that the nine months was a penalty, a serious penalty. And I think that the questions we've been discussing are framed in the context of assuming in hindsight that prison disciplinary officials had the benefit of the linear decision. And I'll note that the Tyler V. Hooks decision by this court specifically held that linear broke new ground. And I think that whether you're looking at it through Wolf or through Teague, which I'd be happy to talk about habeas doctrine and the many features of that. But whether you're looking at through either of those lenses, that by breaking new ground, the about what federal law requires in linear, that then looking back at everything that's happened through that prism is would be a retroactive application of a new procedural rule. What's the answer? The council said we've already done it in the first. We've looked at cases that were retroactively applied, and I'm sure that cases probably were not as direct as this. This is about as clear cut as you can get. I can see if somebody's using the application. Well, you know, I want to see whether or not, you know, somebody tossed my my cell when I was there. Somebody did something on the yard and I want to get video, that aspect of whatever, whatever. But here, this is just a simple charge, not simple charge. It's an important charge, obviously. But it's a very discreet, not simple, but a discreet request that I would think that's just common sense and fairness with that. And we've already done so. So I think because our court saw the fairness of it, that's why we did so. I don't agree, Your Honor, that the linear has already applied retroactive retroactively. Do you disagree with that? Well, we can do that. Maybe she can give us the basis for saying that. I can guess. Let me predict it since I don't get to get back up. But my guess is that linear, it did remand linear, reached its holding and then remanded for further proceedings rather than engaging in a retroactivity analysis. Right. In that case. But I think that what that means is on remand. In my view, the district court would be faced with the retroactivity question. And my recollection is that I believe on remand linear settled. I know there haven't been any further substantive decisions in that case. But I think what what that means that doesn't necessarily mean anything here because T is not jurisdictional and has to be raised by the government. And so they didn't raise it before the court in linear. I don't know if they would have raised it on remand, but I don't think it's true that linear has already been applied retroactively. And I think if the court were to reach that holding here, it would break significant new ground as a matter of both statutory and constitutional law. Also, can I can I change the subject for you for just just a few minutes? Your colleague on the other side suggests that there's no state remedy. And in essence, saying that state habeas review does not permit considering prison disciplinary hearings that that lose nine months, as we've talked about. You seem to suggest in your brief that that that's not true, that Carroll versus Johnson, in fact, changed the law in Virginia. And in fact, you can receive state habeas review in either the circuit court or the Supreme Court. It's up to the litigant to decide which of those to follow. And indeed, quite a few district courts in Virginia have have so held. First, is that true? And if so, can can you help me understand what happened with the Supreme Court in this particular case? Does the does the Commonwealth contend that's a that was a mistake? Or do you have another explanation for for the Supreme Court's decision in this particular case? I think your honor's interpretation of Carroll is correct. Carroll did away with the immediate release requirement. And in doing so held that any holding that may eventually affect a future release. In other words, the duration of a confinement is cognizable on state habeas. I think I think that is the correct reading of Carroll. I think in terms of the Supreme Court's decision here, I am not sure what happened. I think that it could have come out the other way. And I think this isn't the first time in habeas that we might see a state court reaching a decision under state law that maybe we don't agree with. Now, I don't have another explanation for the Supreme Court's ruling in Carroll. But I do think it's important to note that let me ask you about that on. Does that mean that in this case, Wall could still raise his claim in state court as he starts as he comes to the end of his term, which has been affected by the ruling here? In other words, what is the nature of the Virginia Supreme Court holding that? Do they deny it altogether or is it a timing issue? He dismissed it for lack of jurisdiction. Well, I understand that, but it seems sort of peculiar. It's sort of a notion that it doesn't arise yet because this is a future event, right? I think that's maybe one way to read what the Supreme Court of Virginia did in Mr. Wall's decision here. I don't know that that's entirely consistent with the Carroll precedent that was announced. Again, Carroll itself made habeas more available, not less available. But I'd like to just set all of that aside, Your Honors, because I don't think that it affects the analysis here, which is whether there's a state court adjudication on the merits. More generally, whether a state court even allows habeas relief or allows for direct review of these types of decisions, that can't affect the federal court's habeas authority under 2254. As Judge Richardson noted, Teague is a statutory interpretation case. And so this idea that, as a general matter, whether states provide an adequate remedy, it's not even remedy, it's whether they provide review. And more specific to this case, the idea that whether states correctly apply that law or not, the outcomes of those two inquiries can't then be read to expand and contract the federal court's habeas authority. Because what you would end up with is a different reading of 2254, not just in every single state, but in every single case, based on whether a state applied its rules of appellate procedure correctly or incorrectly. And I just don't think that's a tenable reading of 2254 or what Teague is doing. Counsel, you already have that. The whole nature of 2254 is based upon the state's laws. That's how federalism works to that extent of it. We look at what the state has done, we give deference, and the deference is based on that court ruling its law. And obviously, a case in another state is going to be based on that state's law. So that difference exists anyway. Yeah, there's no uniformity that's reached by taking the view you're talking about in terms of Teague's impact there. I have two responses to that. The first is this is not a deference case. As Judge Richardson noted, this is not a 2254D case because there wasn't an adjudication on the merits. I know that. But you suggested this will cause a lack of uniformity in a difference in terms of how we may apply 2254 based on the difference in state laws. But isn't that the framework for it anyway? Your Honor, I was making a slightly different point, which there can't be a difference. I'm not talking about a difference in uniformity of outcomes. I'm talking about a difference in federal court habeas jurisdiction in terms of whether the cases can even get into court under 2254. And I think that the way that Teague interpreted that statute did so, saying that when federal courts sit in habeas, it's not a freewheeling constitutional review. It's a limited scope remedy. And that remedy doesn't allow for retroactively applying new procedural rules. So you're saying exhaustion does not vary from state to state? How the case is exhausted doesn't vary? And all based on state criminal proceedings and procedures that are available? I see my time has expired. May I answer, Your Honor? Yes, you may. I do agree that exhaustion varies from state to state. But that's just not what's at issue here. The issue here is that under petitioner's theory, when federal courts would be statutorily authorized to grant habeas relief would vary based on whether a state provides, say, direct review or how it applies habeas or how a state court applies those procedures. And an interpretation of a federal court's authority can't depend on exogenous factors like that. I don't think that there's any support for that kind of reading. Okay, thank you, Counsel. Appreciate it. Thank you, Your Honors. We'd ask you to affirm. Yes. Ms. Bateman, you have a few moments left. Thank you, Your Honor. I'd like to start with something that the Commonwealth and Mr. Wall agree upon. And that's that if there isn't a retroactivity bar, the question of harmlessness, whether the video could have made a difference in Mr. Wall's disciplinary hearings, is one that can only be resolved on remand. So, Wolfe. The Commonwealth never directly addresses the argument that Wolfe is a 1983 case that limits 1983 relief. This court need only look to the question presented in Wolfe to see that that's true. And the question presented in Wolfe was whether under Prizer v. Rodriguez, the validity of the procedures for depriving prisoners of good time credits may be considered in a civil rights suit brought under 42 U.S.C. Section 1983. It has nothing to do with the availability of habeas relief. But even so... No, but it does have to do with the principles that both Teague and Wolfe addressed is how do we apply rules that have changed? In other words, the law constantly is changing. It's changing statutorily. It's changing rules. It's changing with decisions. And we have to have some rules to create finality. And both Wolfe and Teague basically established principles of law that direct us how to assess retroactivity. Otherwise, everybody in prison is just continuously bringing habeas proceedings as each new rule and each new case comes down. I mean, even this case, it's not dependent on the state. It would be a universal rule that we can now review procedural rules that are not retroactive. And this rule was established four years after this proceeding. And so now you wish us to apply a rule that was established four years after the final disposition in prison to that. What prevents the guy that's been in there 10 years from raising it? And in other words, there comes a practicality notion that all these cases address is the law is dynamic. And it's not a question of justice. Generally, we addressed the justice issue in Lanier. The question is, as we change the law and correct things, how far back do we go and uncover everything that's been done? When those proceedings were at the time fully just and compliance with law. This this four year differential is fairly significant, isn't it? Well, Your Honor is exactly correct. That Wolfe does deal with the potential retroactive effect of rules. It is not the case of this as the Commonwealth seeks to convey now that Wolfe created a bright line rule that no procedural rules can ever apply retroactively. In fact, Wolfe has a. Of course, this is part of the dialogue. I mean, we have to assess where the Supreme Court was in Wolfe and they were applying general principles of retroactivity. It's much more clear in Teague because Teague did lay out some very specific principles. So your argument, I gather, is saying because the Supreme Court articulates these principles in context which aren't identical. Therefore, the general legal principle of retroactivity of procedural rules and substantive rules don't apply. But I don't think that's the teaching of either case. I think they were confronted in the context of which they were being raised of whether a rule or procedural rule or a substantive rule should be retroactive. And they're not inconsistent. I think Teague clarified it, don't you? The principles. I understand one is a 1983 case and the other is 2254. That is right, Your Honor. Teague set out rules for retroactivity in habeas cases. But even if this court were to be concerned as to whether other prisoners could avail themselves of retroactive effective rules, I think this court should rest comfortably on the fact that Lanier can only apply retroactively to an exceedingly slim category of cases where good time credit was lost prior to Lanier, the prisoner requested consideration of that video evidence, raised and exhausted that claim in state court, received no merits consideration there, timely raised the habeas petition and remains in custody. We ask you to afford the same relief as in Williams v. Hawkins. Yes, Your Honor. Chief, with your indulgence, may I ask one? Oh, absolutely. Absolutely. Thank you. So I talked with your colleague a minute ago about Carroll v. Johnson. And I just want to understand, do you believe that Carroll v. Johnson bars the use of habeas in circumstances like Mr. Walls, not Mr. Walls particularly, but in this type of circumstance with the prison disciplinary hearing? I'm not certain that's the answer to that question, Your Honor, but I'd be happy to provide an answer in supplemental briefing. You don't need to do that. I just wanted to make sure if you had a position, I wanted to understand it. That's all. Thank you. Thank you. Thank you so much. All right. Thank you so much, Ms. Bateman and Ms. Samuels for your fine job. And Ms. Bateman, I know that you are a court opponent. I want to give you a special thanks on behalf of the court. Lawyers like yourself help us tremendously in handling these cases. And thank you so much. We appreciate that. And Ms. Samuels, thank you for your representation. With that, unfortunately, we can't come down and shake your hands as we would in our normal tradition. But know that we appreciate it very much and wish that you'll be safe and stay well. Take care. Thank you.
judges: Roger L. Gregory, Paul V. Niemeyer, Julius N. Richardson